{¶ 25} Although I agree with the majority that Connecticut law applies, I do not believe that the Connecticut courts would apply the law of that state in a manner consistent with Scott-Pontzer v. Liberty Mut.Fire Ins. Co., 85 Ohio St.3d 660, 1999-Ohio-292. Therefore, I respectfully dissent from the disposition of the case.[44]
 {¶ 26} Despite Connecticut law's seeming similarity withScott-Pontzer, I cannot conclude that the Connecticut Supreme Court would apply the law of that state to provide coverage in a manner consistent with Scott-Pontzer. In both Ceci and Hansen, the Connecticut Supreme Court found ambiguity in the use of family member language, particularly since those seeking coverage were family members of closely-held corporations who believed that their policies covered them as individuals. The ambiguity thus existed because of the family member wording of the definition of an insured.
 {¶ 27} Although the Ohio Supreme Court found a policy ambiguity inScott-Pontzer, it did not do so on the basis of family member language in the policy. It simply found that it made no sense for corporations to insure themselves when the corporate entity could not drive. At least in so far as the Ceci and Hansen decisions are involved, Scott-Pontzer is far-removed.
 {¶ 28} The Agnosto decision presents a more difficult comparison. Agnosto worked for the state police — not a closely-held corporation. Nevertheless, the Connecticut Supreme Court continued to adhere to its finding that the family member language in the policy created an ambiguity, just as that same language created an ambiguity inCeci and Hansen. And in a somewhat vague reference, the Connecticut Supreme Court hinted that contract principles relating to third party beneficiaries had a bearing on its decision, although exactly what bearing it had is not at all clear. A reference to the third party beneficiary's expectations would imply that the police officer believed that he was covered by the state's policy, perhaps in a manner akin to those owners of closely-held companies in Hansen and Ceci. Supposing that to be the actual basis for the court's decision in Agnosto would be consistent with the prior holdings insofar as they could be premised on the claimants' belief that they had been named insureds under the family member language of their respective policies. Moreover, it is consistent with Connecticut precedent that calls for insurance policies to be "construed from the perspective of a reasonable layperson in the position of the purchaser of the policy." Ceci, 225 Conn. at 168.
 {¶ 29} This interpretation of Agnosto does not help McDonald. Nothing in the record shows that at the time Entex and The Hartford manifested any subjective belief that they would be insuring all of Entex's employees who happened to be driving their own vehicles outside the scope of employment. Nor does McDonald bring to light any facts that would suggest that he had any subjective belief at the time of contracting that he would be covered under the policy. McDonald's position would require us to interpret Connecticut law in a manner that would extend the Connecticut Supreme Court's holdings far beyond their stated basis. And while we are bound to follow Scott-Pontzer as precedent in this state, we should be loathe to extend that aberration of a case to other states until such time as they expressly adopt it as matter of law. I would find that Connecticut law would not provide coverage to McDonald and that the court did not err by granting summary judgment.
[44] In part II of its opinion, the majority engages in a hitherto unknown form of appellate review which it calls "an alternative holding." I am unsure exactly what purpose the majority hopes to serve with this "alternative holding," but there can be no doubt that its discussion under that section is dicta.